IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 15-41-2 |
| | ) | |
| WILLIAM HUGHLEY, JR. | ) | |

OPINION

DIAMOND, D.J.

On February 24, 2015, defendant William Hughley, Jr. was charged in a four-count indictment with the following: attempt to possess with intent to distribute cocaine on or about February 6, 2014, in violation of 21 U.S.C. §846 (Count One);[1] carrying a firearm during and in relation to a drug trafficking crime and possession of a firearm in furtherance thereof on or about February 6, 2014, in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count Two); possession with intent to distribute less than 500 grams of cocaine on or about February 6, 2014, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) (Count Three); and possession with intent to distribute less than 100 grams of heroin on or about February 6, 2014, in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) (Count Four).

Presently before the court are the following pretrial motions filed by defendant: (1) Motion for Discovery (Document No. 60); (2) Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 61); and Motion to Sever Counts of the Indictment (Document No. 64). The government has filed an omnibus response to

---

[1] Co-defendant Tremayne Carr also was charged at Count One of the Indictment.

defendant's motions (hereinafter, the "government's Response"). See Document No. 70. For the reasons stated herein, defendant's pretrial motions will be granted in part and denied in part.

I. **Background**

According to information set forth in the government's Response, the charges against defendant arose as a result of a Drug Enforcement Administration ("DEA") "sting" investigation that involved a confidential informant ("CI") and subsequently an undercover agent ("UA") offering to sell co-defendant Tremayne Carr and his buyer, who turned out to be defendant, six kilograms of cocaine.

The investigation began in August 2013, when DEA Special Agent Keith Stamper learned that an out-of-state CI had been in touch with Carr regarding the purchase of cocaine. Special Agent Stamper subsequently recorded telephone calls between the CI and Carr during which they agreed on a price of $33,500 per kilogram of cocaine. The discussions eventually led to a meeting on January 6, 2014, at a Bob Evans restaurant in Harmar, Pennsylvania, involving Carr, the CI and Pennsylvania State Trooper Michael Warfield, who was acting as the UA. In that role, Trooper Warfield acted as the driver for a substantial cocaine source and agreed to deliver six kilograms of cocaine to Carr, with three kilograms for immediate payment and three more to be "fronted." Subsequent recorded phone calls confirmed this arrangement and indicated that Carr would not be alone when the parties were scheduled to meet on February 6, 2014.

On February 6, 2014, surveillance agents observed Carr at defendant's residence before the scheduled meeting. Subsequently, Carr and defendant arrived together for the meeting, with defendant driving and Carr in the front passenger seat. The UA got into the backseat of the vehicle

2

⚞AO 72
(Rev. 8/82)

and Carr showed him a plastic bag that contained $7,500 in cash. After the UA exited defendant's car, other agents moved in and recovered the $7,500 in cash from the front passenger floorboard, as well as an additional $2,966 and 6.5 grams of cocaine from defendant's front pants pocket. In addition, a loaded Smith and Wesson .357 caliber handgun was recovered from under the front driver's seat. Defendant subsequently consented to a search of his residence, where agents recovered a digital scale and packaging material, 3 baggies containing a total of 11.84 grams of cocaine and 3 baggies containing a total of 2.6 grams of heroin packaged in 150 stamp bags.

Both defendant and Carr were advised they were not under arrest, but they were interviewed. Defendant indicated that Carr had arranged a deal with the UA to purchase six kilograms of cocaine for the price of $33,500 per kilogram and 3 kilograms were to be "fronted." Carr did not have any money, so they brought defendant's money, which was far less than the agreed upon price, but the plan was to see what they could negotiate. In addition, defendant explained that prior to the arranged meeting, he had stopped at a bar to meet a potential buyer for the cocaine seized from his person, but the buyer did not show up. Finally, defendant said that he brought the handgun for protection in case the UA intended to rob them, but claimed that he had no intention of robbing the UA.

According to the government's Response, the indictment was returned after an analysis was completed on the drugs seized from defendant and subsequently from his residence. Count One pertains to defendant's and Carr's attempt to obtain six kilograms of cocaine from the UA, Count Two relates to the loaded handgun which defendant allegedly brought to the February 6, 2014, meeting, Count Three involves the cocaine found on defendant's person and recovered when his residence was searched, and Count Four deals with heroin also found at defendant's residence.

3

## II. Motion for Discovery (Document No. 60)

Defendant has filed a motion seeking discovery of various categories of information, including, inter alia, requests for Rule 16(a) material and exculpatory material and impeachment material related to prospective government witnesses.

Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and materials available pursuant to the "Brady doctrine."[2] Id.

In response to defendant's discovery motion, the government has acknowledged its obligations under Rule 16 and the Brady doctrine. Accordingly, defendant's discovery motion and request for exculpatory evidence will be granted in part, and the government will be required to turn over all information falling under Rule 16(a)[3] and the Brady doctrine to the extent that any such information exists and has not already been provided to defendant.[4] To the extent defendant's

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] The government states in its Response that Rule 16(a) physical and documentary evidence previously was provided to defendant or is available by contacting DEA Special Agent Stamper. With respect to expert witnesses, the government disclosed four lab reports related to analysis of drugs obtained from defendant and those reports disclose the identities, position and degrees of the analysts. The government also indicated it will provide information related to its expert witness as soon as it is available.

[4] The government indicates in its Response that it believes it has complied with the requirement of Local Criminal Rule 16C which requires the government to provide defendant at the arraignment with any exculpatory evidence.

4

discovery motion requests information that does not fall within the scope of Rule 16(a), Brady or the Jencks Act,[5] those requests will be denied.

As to the timing of the required disclosures, it is well settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. In contrast, Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983). Therefore, should the government discover the existence of any exculpatory Brady evidence which has not already been provided, such evidence must be disclosed to defendant forthwith. As to impeachment material, the Third Circuit encourages adherence to the long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting Higgs, 713 F.2d at 44, n.6). Given the nature of this case, disclosure of Brady impeachment material five days prior to trial is sufficient to protect defendant's due process rights and to ensure that trial delay is avoided, and an order will be entered to that effect.

---

[5]The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b); United States v. Weaver, 267 F.3d 231, 245 (3d Cir. 2001). Pursuant to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Accordingly, "the government has no obligation to produce Jencks material until the witness has testified." United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012). Although the government has no obligation to provide defendant with Jencks material until a witness testifies, the court will enter an order encouraging, but not compelling, the government to provide any Jencks material to the defense five days prior to trial. See Maury, 695 F.3d at 248 n.18 (recognizing that "[d]espite [§3500(a)], many federal prosecutors routinely turn over Jencks material a few days before the witness testifies").

5

### III. Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 61)

Defendant seeks an order compelling the government to provide him with a statement of the nature, dates and places of occurrences of any offenses or acts of misconduct other than those set forth in the indictment which the government will seek to offer in evidence at trial pursuant to Fed.R.Evid. 404(b) and/or evidence of any prior convictions pursuant to Rule 609.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. See Fed.R.Evid. 404(b)(2). According to the Rule, "[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." Fed.R.Evid. 404(b)(2)(A) and (B).

The commentary to Rule 404(b) explains that other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case. Courts that have considered what constitutes "reasonable notice" have concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days).

The government argues in its Response that defendant's admissions of past drug distribution when he was interviewed on February 6, 2014, and/or to his co-defendant, are intrinsic to the charged offenses and are relevant to show background. Alternatively, if such admissions are

6

deemed Rule 404(b) evidence, they are relevant to show background information which completes the story of the crime, defendant's intent regarding the drugs charged in Counts One, Three and Four and the firearm in Count Two, as well as defendant's motive relative to Counts One and Two.

It is premature at this time to rule whether defendant's admissions of past drug distribution are intrinsic to the charged offenses or whether they are Rule 404(b) evidence. However, to the extent that evidence of defendant's admissions of past drug distribution falls under Rule 404(b), the government essentially has notified defendant of its intent to offer such evidence at trial. If the government intends to introduce any other evidence which falls under Rule 404(b), the government must provide defendant with the required notice at least seven days prior to trial, which is consistent with the case law interpreting the rule, and an order will be entered to that effect.

As for defendant's request under Rule 609, the government indicates that it does not intend to introduce any prior conviction or evidence falling under that rule,[6] nor does it intend to show defendant's possession of a firearm at any time other than on February 6, 2014, which is the date charged in Count Two of the indictment.

---

[6] Rule 609(a)(1)(B) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment. The only notice requirement in Rule 609 is that the government is required to provide "reasonable written notice" of its intent to use evidence of a conviction more than ten years old. Fed.R.Evid. 609(b)(2).

AO 72
(Rev. 8/82)

## IV. Motion to Sever Counts of the Indictment (Document No. 64)

Defendant has moved to sever Counts One and Two of the indictment from the trial of Counts Three and Four. According to defendant, he will not contest the attempted possession with intent to distribute cocaine charged in Count One, but he seeks a trial on Count Two (possession of a firearm during and in relation to the attempted purchase of drugs) separate from Counts Three and Four (charging possession with intent to distribute cocaine and heroin, respectively). According to defendant, separate trials are warranted on the drug counts and the firearm count under Federal Rule of Criminal Procedure 14(a) because joinder of the offenses is prejudicial to him. The government responds that all counts of the indictment are properly joined and defendant will not be prejudiced if they are tried together, thus his severance motion should be denied. For the following reasons, the court will deny defendant's motion to sever.

Rule 8(a) provides that an indictment may charge a defendant in separate counts with two or more offenses if the offenses charged: (1) are of the same or similar character; or (2) are based on the same act or transaction; or (3) are connected with or constitute parts of a common scheme or plan. Here, defendant does not claim improper joinder of the charges against him under Rule 8(a). See defendant's Motion to Sever (Document No. 64), ¶5 ("Even where multiple offense are deemed properly joined under Rule 8(a) because they are 'of the same or similar character,' this Court has great latitude and discretion to sever counts pursuant to Rule 14 of the Federal Rules of Criminal Procedure in the interest of justice."). However, he contends that joinder of the charges is prejudicial to him.

Federal Rule of Criminal Procedure 14, which deals with relief from prejudicial joinder, only comes into play after it first has been determined that joinder was permissible under Rule 8(a).

AO 72
(Rev. 8/82)

United States v. Graci, 504 F.2d 411, 413 (3d Cir. 1974). According to Rule 14(a), if the joinder of offenses in an indictment appears to prejudice a defendant, the court may order separate trials of counts. A motion for severance under Rule 14 rests in the sound discretion of the district court. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981). One who claims improper joinder under Rule 14 must demonstrate clear and substantial prejudice. Id. Mere allegations of prejudice are not enough, and it is insufficient to establish that severance would improve the defendant's chance of acquittal. Id. Rather, the question of prejudice focuses on whether the jury will be able to compartmentalize the evidence as it relates to each count. See United States v. Green, 563 Fed. Appx. 913, 917-918 (3d Cir. 2014) (holding that the district court did not abuse its discretion in denying the defendant's motion to sever counts where the jury could compartmentalize the evidence supporting each count). Moreover, if there is any risk of prejudice, instructing the jury on its duty to consider each count independently is a proper remedy. See Zafiro v. United States, 506 U.S. 534, 540 (1993).

In this case, defendant generally claims that he will be prejudiced by joinder of the firearm count with the drug counts because the drugs found in his home have no connection to the attempted drug transaction and the firearm he allegedly carried during and relation to that attempt. However, defendant has failed to pinpoint clear and substantial prejudice sufficient to justify severance under Rule 14. Further, defendant has not shown that this case is so complicated that a jury would be unable to follow proper instructions or appropriately compartmentalize the evidence. See United States v. Walker, 657 F.3d 160, 170 (3d Cir. 2011) (finding joinder non-prejudicial when the case "featured charges arising from only three distinct episodes of criminal conduct"). In sum, defendant has not demonstrated that a trial on all four counts will "prevent the

AO 72
(Rev. 8/82)

jury from making a reliable judgment about guilt or innocence." See Zafiro, 506 U.S. at 539. Accordingly, defendant's motion will be denied.

## V. Conclusion

For the foregoing reasons, defendant's pretrial motions will be granted in part and denied in part as explained herein. An appropriate order will follow.

*Gustave Diamond*
Gustave Diamond
United States District Judge

Date: December 2, 2015

cc: Leo M. Dillon
Assistant U.S. Attorney

W. Penn Hackney
Assistant Federal Public Defender

AO 72
(Rev. 8/82)